**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EMPRESS CASINO JOLIET CORPORATION, an Illinois corporation, DES PLAINES DEVELOPMENT LIMITED PARTNERSHIP, an Illinois limited partnership d/b/a Harrah's Casino Cruises Joliet, HOLLYWOOD CASINO-AURORA, INC., an Illinois corporation, and ELGIN RIVERBOAT RESORT-RIVERBOAT CASINO, an Illinois general partnership d/b/a GRAND VICTORIA CASINO, | ) ) ) ) ) ) ) ) ) ) ) ) | **Case No. 09 CV 03585** |
| Plaintiffs, | ) ) | **Hon. M. Kennelly** |
| v. | ) ) ) | **Magistrate Judge Cox** |
| ROD BLAGOJEVICH, FRIENDS OF BLAGOJEVICH, JOHN JOHNSTON, BALMORAL RACING CLUB, INC., MAYWOOD PARK TROTTING ASSOCIATION, INC., ARLINGTON PARK RACECOURSE, LLC, FAIRMOUNT PARK, INC., and HAWTHORNE RACE COURSE, INC. | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT ROD BLAGOJEVICH'S AND
DEFENDANT FRIENDS OF BLAGOJEVICH'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT**

July 31, 2009

Jay Edelson
 Steven Lezell
 KAMBEREDELSON, LLC
 350 N. LaSalle, Suite 1300
 Chicago, IL 60654
 Tel: (312) 589-6370

*Counsel for Defendant Rod Blagojevich
and Defendant Friends of Blagojevich*

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………………...1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................2

    *Procedural History* ................................................................................................. 2

    *Allegations of the Complaint* ................................................................................ 3

ARGUMENT ........................................................................................................................4

    I.    ABSOLUTE LEGISLATIVE IMMUNITY BARS THE INSTANT
          LITIGATION BECAUSE THE COMPLAINT ALLEGES THE
          DEFENDANTS WERE ACTING IN A LEGISLATIVE CAPACITY ................5

          A.    Absolute Immunity is Deeply Rooted Both in
                Our Nation's History as Well as in Reason ................................................5

          B.    The Focus of the Absolute Immunity Inquiry
                is the Function Performed by the Official ................................................7

          C.    The Instant Complaint Seeks Damages for
                Quintessential Legislative Acts ................................................................8

          D.    Motives Cannot Be Considered When Implicating
                Legislative Immunity ................................................................................9

          E.    Absolute Legislative Immunity Defeats a RICO Action Against
                Friends Of Blagojevich, As Plaintiffs Cannot Show Any Injury
                Proximately Caused By Violation Of the RICO Statute ..........................11

    II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE
          OF *RES JUDICATA* ................................................................................... 14

CONCLUSION ................................................................................................. 17

i

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ........................................................ 12

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................. 4

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998) ...................................................... 4-5, 7-9

*Burns v. Reed,* 500 U.S. 478 (1991) ................................................................... 7

*Dombrowski v. Eastland,* 387 U.S. 82 (1967) .................................................... 4

*Douglas v. City of Jeannette*, 319 U.S. 157 (1943) ........................................... 9

*Edwards* v. *United States*, 286 U.S. 482 (1932) .............................................7-8

*Forrester v. White*, 484 U.S. 219 (1988) .........................................................7-8

*Gravel v. United States*, 408 U.S. 606 (1972) ............................................. 13-14

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992) ............................... 12

*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*,
    440 U.S. 391 (1979) ......................................................................................5-7

*Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373 (1985) .................14-15

*Powell v. McCormack*, 395 U.S. 486 (1969)....................................................... 7

*Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210 (1908) ................................... 8

*Spallone v. United States*, 493 U.S. 265 (1990) ...............................................5-6

*Sup. Ct. of Va. v. Consumers Union, Inc.*, 446 U.S. 719 (1980) ........................6-7

*Tenney v. Brandhove*, 341 U.S. 367 (1951) ...................................................6-7, 9

*United States v. Brewster*, 408 U.S. 501 (1972)............................................... 13

*United States v. Helstoski*, 442 U.S. 477 (1979) ............................................. 14

*United States v. Johnson*, 383 U.S. 169 (1966)............................................. 13-14

**United States Federal Court Cases**

*Acierno v. Cloutier*, 40 F.3d 597 (3d Cir. 1994) ........................................................... 8

*Anderson v. Lincoln Ins. Agency Inc.*,
    No. 02-C-8377, 2003 WL 291928 (N.D. Ill. Feb. 10, 2003)............................. 17

*Bagley v. Blagojevich*,
    No. 05-3156, 2008 WL 4724310 (C.D. Ill. Oct. 22, 2008) ................................. 8

*Bakalich v. Village of Bellwood*,
    No. 03-C-1784, 2006 WL 1444893 (N.D. Ill. May 17, 2006) ............................ 5

*Berkley v. Common Council of City of Charleston*, 63 F.3d 295 (4th Cir. 1995) ........................ 13

*Biblia Abierta v. Banks*, 129 F.3d 899 (7th Cir. 1997)...................................................... 9

*Bonadeo vs. Lujan*,
    No. CIV-08-0812, 2009 WL 1324153 (D.N.M. Apr. 30, 2009) ...................... 11

*Brown & Williamson Tobacco Corp. v. Williams*,
    62 F.3d 408 (D.C. Cir. 1995) ............................................................... 13

*Chappell v. Robbins*, 73 F.3d 918 (9th Cir. 1996) ..........................................10-11, 13

*Cullinan v. Abramson*, 128 F.3d 301, 308 (6th Cir. 1997)............................................ 11

*EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007) .......................... 4

*Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863 (9th Cir. 1995)..............................16-17

*Fox v. Maulding*, 112 F.3d 453 (10th Cir. 1997) ...................................................... 17

*Fralin & Waldron, Inc. v. County of Henrico*, 474 F. Supp. 1315 (E.D.Va. 1979)....................... 4

*Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994)........................................ 2 n.4

*Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir. 1986) ..........................16-17

*Hicks v. Midwest Transit, Inc.*, 479 F.3d 468 (7th Cir. 2007)....................................... 14

*Hollander v. Brown*, 457 F.3d 688 (7th Cir. 2006) .................................................... 4

*Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000)............................................. 4

iii

*Johnson v. Rivera,* 272 F.3d 519 (7th Cir. 2001) ........................................................ 4

*Misischia v. St. John's Mercy Health Sys.,* 457 F.3d 800 (8th Cir. 2006) ..................................... 17

*Rateree v. Rockett,* 852 F.2d 946 (7th Cir. 1988) ........................................................ 6-8

*Schlitz v. Virginia,* 854 F.2d 43 (4th Cir. 1988) ........................................................ 13

*Singer v. Pierce & Assocs., P.C.,* 383 F.3d 596 (7th Cir. 2004) ..................................... 4

*Thillens, Inc. v. Community Currency Exch. Ass'n of Ill.,*
    729 F.2d 1128 (7th Cir. 1984),
    *cert. dismissed sub nom. Thillens, Inc. v. Wall,* 469 U.S. 976 (1984)......................9-10, 13

*Torres-Rivera v. Calderon-Serra,* 412 F.3d 205 (1st Cir. 2005)....................................8, 10-11

*Xinos v. Kappos,* 270 F. Supp. 2d 1027 (N.D. Ill. 2003) ..................................... 14

*Yeldell v. Cooper Green Hosp.,* 956 F.2d 1056 (11th Cir. 1992)..................................... 8

## Illinois State Supreme Court Cases

*Empress Casino Joliet Corp. v. Giannoulias,* 231 Ill. 2d 62, 869 N.E.2d 277 (Ill. 2008),
    *cert. denied,* 129 S. Ct. 2764 (June 8, 2009) ..................................... 15

*River Park, Inc. v. City of Highland Park,*
    184 Ill. 2d 290, 703 N.E.2d 883 (Ill. 1998)................................14-16

*Sundance Homes, Inc. v. County of Du Page,*
    195 Ill. 2d 257, 746 N.E.2d 254 (Ill. 2001) ..................................... 2 n.4

## Illinois State Court Cases

*Schnitzer v. O'Connor,* 274 Ill. App. 3d 314, 653 N.E.2d 825 (1st Dist. 1995)........................... 15

**Federal Rules of Civil Procedure**

Fed.R.Civ.P. 11 .................................................................................................... 1 n.2

Fed.R.Civ.P. 12(b)(6) ........................................................................................... 1 n.1

**Statutes**

18 U.S.C. § 1962 ................................................................................................11-12

18 U.S.C. § 1964(C)…………………………………………………………………..12

28 U.S.C. § 1738 ................................................................................................14-15

**Other Authorities**

Ill. Const. art. IV, § 5 .............................................................................................. 8

Ill. Const. art. IV, § 9(e) ......................................................................................... 8

Ill. Const. art. V, § 13 ............................................................................................. 8

5 Charles Allen Wright & Arthur R. Miller,
    FEDERAL PRACTICE AND PROCEDURE §§ 1226, 1276 (2d ed. 1990)................................... 4

## INTRODUCTION

The instant Plaintiffs, a group of four disgruntled riverboat casinos ("Plaintiffs" or "Casino Plaintiffs"), have tried everything the law allows – and then some – to avoid paying their fair share of taxes under the 2006 Racing Act. Indeed, now that their lobbyists have proven themselves unable to prevent passage of that legislation, and their lawyers have failed to demonstrate its purported unconstitutionality, the Casino Plaintiffs try a new roll of the dice: initiating frivolous litigation against former Illinois Governor Rod Blagojevich ("Blagojevich") and Friends of Blagojevich ("Friends of Blagojevich") (collectively, "Defendants").[1]

Disregarding legal doctrine as well-established as absolute legislative immunity and *res judicata*, and seemingly unaware of the absurdity suggested by their allegations, the Casino Plaintiffs seek to capitalize upon public outrage stemming from the former Governor's criminal proceedings (which have not been permitted their due course). The instant lawsuit is a sanctionable[2] abuse of the judicial process and, as such, should be dismissed in its entirety with prejudice. Even if the allegations of the Complaint[3] were true, which they most certainly are not, the Complaint improperly seeks to hold the former Governor and his campaign fund liable for legislative activities—a result prohibited by all legal authority. As shown below, there exists no basis on which Plaintiffs' Complaint can provide any relief whatsoever, and there exists no amendment that Plaintiffs might proffer to change this immutable fact.

---

[1] As tempting as it is for the Defendants to use this forum and motion as a place to demonstrate their innocence of all the false charges levied against them by these Plaintiffs, the State of Illinois, and the federal government, Defendants will confine their response in accordance with Rule 12(b)(6) and demonstrate why dismissal is proper even if all the Complaint's allegations were to be taken as true.

[2] Counsel for the moving Defendants will be serving Plaintiffs' counsel with a Motion for Sanctions pursuant to Rule 11 of the Federal Rules of Civil procedure.

[3] A true and accurate copy of Plaintiffs' Complaint is attached as Exhibit A.

## FACTUAL AND PROCEDURAL BACKGROUND

*Procedural History*

On May 26, 2006, House Bill 1918 (the "2006 Racing Act") was signed into law by then-Illinois Governor Blagojevich. (Comp. ¶ 28.) The 2006 Racing Act applied to the four Casino Plaintiffs in this case and required them to pay three percent of their adjusted gross receipts for two years into an account known as the 2006 Act Fund. The 2006 Act Fund was to then be paid over to certain horseracing tracks which, in turn, would use the collected revenues to increase purses and pay track-related expenses. (Comp. ¶ 28.) In 2008, a bill was introduced in the Illinois State Legislature to effectively extend the 2006 Racing Act for an additional three years by requiring the Casino Plaintiffs to continue paying three percent of their adjusted gross receipts into a fund (the "2008 Act Fund"). (Comp. ¶ 36.)

On June 12, 2009, the instant Plaintiffs filed a four-count complaint for declaratory judgment and injunctive relief in the Circuit Court of Illinois (the "State Court Action"). The four Plaintiffs named as defendants the Treasurer of the State of Illinois and the Illinois Racing Board, and sought to overturn the 2006 Racing Act by challenging its constitutionality and requesting a permanent injunction against the imposition or collection of the surcharge. Following a decision in the trial court and a subsequent appeal, on June 5, 2008, the Illinois Supreme Court issued its ruling,[4] holding, among other things, that:

- The circuit court erred in holding that the 2006 Racing Act violated the uniformity clause, Ill. Const. art. IX, § 2 (1970);

- There was a reasonable relationship between the classification and object of the legislation;

---

[4] Although the Complaint fails to incorporate it specifically, this Court may take judicial notice of the Illinois Supreme Court's ruling, a true and accurate copy of which is attached as Exhibit B. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (on Rule 12(b)(6) motion to dismiss, district court may take judicial notice of matters of public record); *see also Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 275; 746 N.E.2d 254, 265 (Ill. 2001) (court may take judicial notice of prior litigation).

- The legislature provided express findings regarding the necessity of the tax imposed on the casinos, and those findings had to be accorded great deference;

- The 3 percent surcharge was not subject to a takings challenge;

- The 2006 Racing Act did not constitute a taking of private property within the meaning of the constitutional takings clauses, U.S. Const. amend. V and Ill. Const. art. I, § 15 (1970) because it was not tied to real property;

- The 2006 Racing Act did not violate the public funds clause, Ill. Const. art. VIII, § 1 (1970), because it served a public purpose; and

- The surcharge would benefit the general well-being of society and the prosperity of the people of the State.

Defendant Blagojevich served as Governor of Illinois at all times complained of in Plaintiffs' Complaint. (Comp. ¶ 8.) On December 9, 2008, Blagojevich was arrested following the release of an indictment alleging that he had engaged in certain criminal acts. (Compl. ¶ 46.) The instant Complaint incorporates the Superseding Indictment of Governor Blagojevich, and asserts multiple instances of criminal conduct, including mail fraud and wire fraud. (Comp. ¶¶ 36, 59(h).)

Plaintiffs filed the instant action on June 12, 2009 in which they effectively seek to achieve what has previously been rejected by both the Illinois General Assembly and, finally, by the Illinois Supreme Court.

*Allegations of the Complaint*

Defendants vehemently deny the allegations of the Complaint. Plaintiffs allege that Blagojevich and other defendants entered into an agreement whereby certain defendants would provide campaign contributions to Blagojevich in exchange for Blagojevich ensuring enactment of the 2006 Racing Act and its 2008 extension, the 2008 Racing Bill. (Compl. ¶¶ 30, 32.) As a direct result of the enactments of the 2006 Racing Act and the 2008 Racing Bill, the Casino Plaintiffs have paid three percent of their adjusted gross revenues into the 2006 and 2008 Act Funds, paying approximately $89.2 million in total. (Compl. ¶ 48.) The Casino Plaintiffs have

brought this suit seeking to recover damages and to impose a constructive trust over any proceeds paid from the Funds to the horse racing track defendants. (Compl. ¶ 3.)

## ARGUMENT

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted. *Johnson v. Rivera,* 272 F.3d 519, 520-21 (7th Cir. 2001). The court assumes all facts alleged in the complaint to be true and views the allegations in the light most favorable to plaintiffs. *See, e.g., Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004); *see also EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The allegations in the complaint must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level;" if they do not, the plaintiff pleads himself out of court. *EEOC*, 496 F.3d at 776 (citing *Bell Atlantic,* 550 U.S. at 555).

If the complaint itself demonstrates immunity, however, the court is forbidden to redress the injury. *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (citing 5 Charles Allen Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE §§ 1226, 1276 (2d ed. 1990) (discussing built-in defenses)). This is so because absolute immunity enables legislators to be free, not only from "the consequences of litigation's results, but also from the burden of defending themselves." *Dombrowski v. Eastland,* 387 U.S. 82, 85 (1967); *Fralin & Waldron, Inc. v. County of Henrico*, 474 F. Supp. 1315, 1320 (E.D.Va. 1979). Likewise, if the allegations on their face give rise to an affirmative defense, the plaintiff pleads himself out of a lawsuit. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006).

In this case, the Complaint demonstrates that Defendant Blagojevich has been sued for two specific legislative actions: (1) securing the enactment of and (2) signing two legislative bills. (Compl. ¶¶ 2, 28-30, 37-38, 47- 48, 59). These are purely legislative activities and, consequently, Blagojevich is absolutely immunized from any claim of wrongdoing. *See Bogan*

*v. Scott-Harris*, 523 U.S. 44, 55 (1998); *Bakalich v. Village of Bellwood*, No. 03-C-1784, 2006 WL 1444893, **4-5 (N.D. Ill. May 17, 2006).

In addition, the allegations against Friends of Blagojevich are similarly fatally impacted. Legislative immunity acts as an absolute bar against any inquiry into the motives or reasons for the passage of legislation. The allegations against Friends of Blagojevich are entirely dependant upon such motives or reasons in order to establish the "but for" injury and "proximate cause" components under RICO. (Compl. ¶ 64.) Hence, and as explained further below, the Complaint against Friends of Blagojevich should be dismissed with prejudice as well.

Finally, because this lawsuit essentially seeks to litigate issues that were already adjudicated and decided by the Illinois Supreme Court, the instant claims are barred by the doctrine of *res judicata*. Each of these arguments is explained below.

## I. ABSOLUTE LEGISLATIVE IMMUNITY BARS THE INSTANT LITIGATION BECAUSE THE COMPLAINT ALLEGES THE DEFENDANTS WERE ACTING IN A LEGISLATIVE CAPACITY.

Absolute immunity for legislative acts is nothing new. In fact, it is soundly anchored in both tradition as well as reason. Whether a public official is immunized does not depend on the reasons for his or her action; rather, the focus is on the function being performed by the official. Improper motives – even bribery – do not alter the analysis. As a consequence, the Plaintiffs have pleaded themselves out of the case, and Blagojevich cannot be held liable for the allegations contained in the Complaint.

### A. Absolute Immunity is Deeply Rooted Both in Our Nation's History as Well as in Reason.

Absolute immunity for legislators at all levels of government performing legislative functions has deep historical roots. "The immunity of legislators from civil suit for what they do or say as legislators . . . was consistently recognized in the common law and was taken as a matter of course by our Nation's founders." *Lake Country Estates, Inc. v. Tahoe Regional*

*Planning Agency*, 440 U.S. 391, 403 (1979); *accord Spallone v. United States*, 493 U.S. 265, 278-79 (1990).

Moreover, absolute immunity is equally well-grounded in reason. As stated by Justice Frankfurter writing for the majority in *Tenney v. Brandhove*, 341 U.S. 367 (1951):

> The reason for the privilege is clear . . . . "In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offence."

*Id*. at 373 (citations omitted). Hence, the need to protect the democratic decision-making process, the danger of time and energy distraction, as well as the deterrence of qualified individuals from public service, are all reasons which militate in favor of immunity for legislators. *See, e.g., Sup. Ct. of Va. v. Consumers Union, Inc.*, 446 U.S. 719, 731-732 (1980); *Tenney*, 341 U.S. at 373, 377; *Spallone*, 493 U.S. at 279 (stating that in cases involving the federal common law of legislative immunity, the Supreme Court has emphasized that any restriction on a legislator's freedom "undermines the 'public good' by interfering with the rights of the people to representation in the democratic process.") (citations omitted).

Absolute legislative immunity is especially critical "in times of political passion" where "dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses." *Tenney*, 341 U.S. at 378 (internal citations omitted); *see also Rateree v. Rockett*, 852 F.2d 946, 951 (7th Cir. 1988) ("One recourse in dealing with legislators who hide behind their shield of immunity and vote 'improperly' is, of course, a resort to the ballot box.")

In short, absolute legislative immunity has deep historical roots. The policy behind legislative immunity is the public good that derives from allowing public officials to perform legislative functions without fear of personal liability. Moreover, absolute legislative immunity

promotes this "public good" while maintaining essential checks on, and remedies against, unlawful governmental conduct.

**B.    The Focus of the Absolute Immunity Inquiry is the Function Performed by the Official.**

Legislators are absolutely immune from suit for their legislative activities.  *Bogan*, 523 U.S. at 49.  As a result, immunity covers a broad range of conduct, including:  (1) core legislative acts, such as introducing, debating, and voting on legislation; (2) activities that could not give rise to liability without inquiry into legislative acts and the motives behind them; and (3) activities essential to facilitating or preventing the core legislative process.  *Id*. at 46, 48-52, 55.

The Court applies a "functional approach" to determine whether immunity applies that looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 224, 228 (1988); *Burns v. Reed,* 500 U.S. 478, 486 (1991).  As stated by the Seventh Circuit:

> "We look to the function the individual performs rather than his location within a particular branch of government." For example, when the Vice President of the United States votes in the Senate to break a tie . . . he acts legislatively, not executively.  Similarly, the President acts legislatively when he approves or vetoes bills passed by Congress.

*Rateree,* 852 F.2d at 951 (citations omitted).  Given the focus on function, as opposed to title, legislators are entitled to absolute immunity at every level of government.  *See Powell v. McCormack*, 395 U.S. 486, 502-506 (1969) (federal level); *Tenney*, 341 U.S. at 379 (state level); *Lake Country Estates,* 440 U.S. at 406 (regional level).  Officials outside the legislative branch are equally entitled to absolute legislative immunity whenever they "perform legislative functions."  *Bogan,* 523 U.S. at 55; *Sup. Ct. of Va.*, 446 U.S. at 734 (State Supreme Court entitled to legislative immunity when its members act in a legislative capacity to promulgate a State Bar Code); *Edwards* v. *United States*, 286 U.S. 482, 490 (1932) (noting "the legislative character of the President's function in approving or disapproving bills.").

A governor's act of signing a bill into law constitutes an integral part of the legislative process, entitling the chief executive to legislative immunity. *Bogan*, 523 U.S. at 55 (citing *Edwards*, 286 U.S. at 490); *see also Smiley v. Holm*, 285 U.S. 355, 372-73 (1932) (recognizing a governor's signing or vetoing of a bill as part of the legislative process); *Torres-Rivera v. Calderon-Serra*, 412 F.3d 205, 212-13 (1st Cir. 2005) (holding that a governor who signs or vetoes legislation is entitled to absolute immunity related to that act); *Bagley v. Blagojevich*, No. 05-3156, 2008 WL 4724310, **1-2 (C.D. Ill. Oct. 22, 2008) (governor's line item veto was a legislative act).

### C. The Instant Complaint Seeks Damages for Quintessential Legislative Acts.

The Illinois Constitution authorizes the Governor to convene the Legislature, Ill. Const. art. IV § 5, and to "recommend such measures as he deems desirable." Ill. Const. art. V, § 13. The Illinois Governor, therefore, is constitutionally authorized to recommend legislative measures. Further, the Governor is vested with approval or veto power over legislation, including the right to make specific "recommendations for change" to a bill. Ill. Const. art. IV, § 9(e). These acts are unarguably and quintessentially legislative in nature. *See, e.g., Yeldell v. Cooper Green Hosp.*, 956 F.2d 1056, 1063 (11th Cir. 1992) ("[T]he decision whether or not to introduce legislation is one of the most purely legislative acts that there is.").

Determinations related to taxing and distribution of tax revenues are quintessentially the formulation of prospective, legislative-type policy indicative of traditionally legislative functions. *See Rateree*, 852 F.2d at 950-51; *see also Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908). This principle is true regardless of the scope of the impact of the legislation at issue because the function performed – *i.e.*, tax and spending decisions relating to the state economy – controls the determination of whether local officials are performing legislative functions entitling them to absolute immunity. *See Acierno v. Cloutier,* 40 F.3d 597, 613 (3d Cir. 1994); *see also Forrester*, 484 U.S. at 224.

8

Where, as here, a government entity (the State of Illinois), enacts facially benign legislation for lawful reasons, the individuals who participate in the enactment of that legislation cannot, as a matter of law, proximately cause any actionable injury to those who may be adversely affected by the legislation. To permit individual legislators to be held liable would permit anyone adversely affected by otherwise lawful legislation to target one or two individuals, assign some improper motive, and seek to recover for an "injury" which is the lawful effect of lawful legislation. *Douglas v. City of Jeannette*, 319 U.S. 157, 165 (1943). As a result, Blagojevich cannot be held liable for damages based upon the Complaint's allegations.

### D. Motives Cannot Be Considered When Implicating Legislative Immunity.

As a corollary to the functional approach is the notion that whether a law was purportedly enacted due to the legislator's alleged "bad" or "improper" motives is irrelevant to the question of immunity. *See Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997). Indeed, individual personal motivations are of no moment to whether particular officials are performing legislative functions and, therefore, entitled to absolute immunity. *Tenney*, 341 U.S. at 377. Absolute legislative immunity shields a legislator's conduct even when that conduct is based on improper motives. *Bogan*, 523 U.S. at 54-55. Thus, wherever a defendant is sued in his or her individual capacity, he or she is entitled to absolute immunity so long as he or she was performing a discretionary legislative function.

The Seventh Circuit has definitively ruled that legislative immunity bars any RICO claim based on a legislator's acceptance of bribes. *See Thillens, Inc. v. Community Currency Exch. Ass'n of Ill.*, 729 F.2d 1128, 1131 (7th Cir. 1984), *cert. dismissed sub nom. Thillens, Inc. v. Wall*, 469 U.S. 976 (1984). *Thillens* involved a suit alleging a conspiracy to bribe state legislators to use their influence to drive plaintiff out of business. 729 F.2d at 1128. Plaintiff argued that immunity should not bar suit against the legislators because it was suing based on the acceptance of bribes, not legitimate legislative activity. *Id.* at 1131. The *Thillens* court rejected this distinction:

> Thillens' charges thus broadly implicate the defendants' function of influencing
> the legislative process regarding a legitimate legislative issue. Establishing the
> defendants' role in the conspiracy naturally would require investigation into
> activities cloaked with immunity, including study of staff activities and
> motivations for acts of the defendants and their staffs geared toward enacting the
> challenged laws. Official immunity was designed to prevent a plaintiff from using
> a civil action to peer so deeply into the legislative process.

*Id*. The Seventh Circuit thus reversed the District Court, concluding that, because Thillens'

claims depended upon proof of the motives behind legislative actions taken after bribes were

accepted, immunity barred suit. *Id.*

In *Chappell v. Robbins*, 73 F.3d 918 (9th Cir. 1996), the Ninth Circuit was confronted

with an extreme situation: a case where a former California state senator, Robbins, had *admitted*

that he had taken bribes from the insurance industry in exchange for legislative action. *Id*. at

920. The Ninth Circuit nevertheless affirmed the District Court's dismissal of the RICO claims

against Robbins upon finding that Robbins' actions fell within the common law legislative

immunity. *Id.* at 920, 925. As the *Chappell* court reasoned:

> Chappell argues that protecting Robbins from liability for sponsoring legislation
> in return for bribes does nothing to promote the integrity of the legislative
> process, and such conduct cannot fairly be called "legitimate legislative activity."
> He also contends that his allegation about Robbins' motive should allow him to
> survive a motion to dismiss. Chappell misconstrues the nature of the immunity.
> The immunity serves a prophylactic function central to the proper functioning of a
> democratic government, making representatives answerable to the entire
> electorate rather than a select few. For our founding fathers . . . the growth of
> democracy and the right of the nation's legislators to be free from civil suit went
> hand-in-hand. It was well understood that for a democratic government to
> function democratically, our elected officials, when acting in their legislative
> capacity, must answer only to their constituents and only on election day. In
> order to serve its protective function, the immunity must apply without regard to
> any allegations of improper motive.
>
> The claim of an unworthy purpose does not destroy the privilege. Legislators are
> immune from deterrents to the uninhibited discharge of their legislative duty, not
> for their private indulgence but for the public good. One must not expect
> uncommon courage even in legislators. The privilege would be of little value if
> they could be subjected to the cost and inconvenience and distractions of a trial
> upon a conclusion of the pleader, or to the hazard of a judgment against them

10

based on a jury's speculation as to motives. . . .

*Id.* at 921 (internal quotations omitted); *see also Torres-Rivera*, 412 F.3d at 214 (defendant governor sued over signing of legislation: "[T]here can be no inquiry into legislative motive no matter how corrupt . . . ."). Other courts have universally held that absolute immunity applies to bar individual RICO liability. *See, e.g., Cullinan v. Abramson*, 128 F.3d 301, 308 (6th Cir. 1997) (there is no reason "to suppose that RICO was intended to abolish [absolute immunity] . . . .").

Blagojevich is therefore protected from suit by absolute legislative immunity. The acts of which he is accused in Plaintiffs' Complaint and which are the focus of this suit are undoubtedly legislative. A legislator's decisions regarding legislation, including the balancing of competing interests and the consideration of nonconsideration of issues, is left to the legislator's discretion:

> There is rarely an instance when an act of the government cannot be called by someone corrupt, or an entity or individual cannot assert that the state was acting for the benefit of another. The legislators enjoy immunity because of the functions in which they participate, not because they had pure motives."

*Bonadeo vs. Lujan*, No. CIV-08-0812, 2009 WL 1324153, **19-20 (D.N.M. Apr. 30, 2009) ("There may even be agreements between legislators for different purposes and to further their legislative needs and interests."). Hence, any allegations regarding Blagojevich's improper motives are not properly considered when determining the scope and effect of his immunity.

    **E.**     **Blagojevich's Absolute Legislative Immunity Defeats a RICO Action Against Friends Of Blagojevich, As Plaintiffs Cannot Show Any Injury Proximately Caused By Violation Of the RICO Statute.**

To state a claim under any provision of the RICO statute, a plaintiff must adequately allege that he sustained an injury that was proximately caused by a RICO violation. Because Plaintiffs cannot to do so, their RICO claim must be dismissed.

Plaintiffs allege that Defendants violated subsections (c) and (d) of 18 U.S.C. § 1962. Under either subsection, a plaintiff may only obtain damages for an injury proximately caused by a violation—thus, each subsection has a different proximate causation element. The first subsection, 18 U.S.C. § 1962(c), makes it unlawful for a person to participate in the conduct of

an enterprise's affairs through a pattern of racketeering activity. A plaintiff may recover under this subsection only for injuries proximately caused by "racketeering activity" within the meaning of the RICO statute. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

Here, the injury, if any, to Plaintiffs was directly caused by the imposition of a statutory scheme. The phrase "injured . . . by reason of" in § 1964(c) of the federal RICO statute requires that a plaintiff show that the defendant's actions were both a "but for" cause and a "proximate cause" of plaintiff's alleged injury. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265-68 (1992). A "direct" relationship between the defendant's conduct and the plaintiff's injury can be the basis for liability, *id*. at 268-69, but one that is "too remote" or "indirect" cannot be. *Id*. at 268-69, 274.

Because of the application of legislative immunity in this action, any link between the predicate act alleged (e.g. bribery, extortion, mail fraud, etc.) <u>cannot</u> be shown, as a matter of law, to be the cause of the injury of which the Casino Plaintiffs complain (enactment of legislation that taxed the Casino Plaintiffs). The allegations of the Complaint are specific, determinative, and fatal for Plaintiffs' action:

> <u>As a direct result of Blagojevich securing the enactment</u> of the 2006 Racing Act and 2008 Racing Act in exchange for Johnston's payments or promises to pay, the Plaintiff Casinos have paid 3% of their adjusted gross revenues into the 2006 and 2008 Act Funds, paying approximately $89.2 million in total.

(Compl. ¶ 48) (emphasis added), and

> The RICO Defendants racketeering activities <u>secured the enactment</u> of the 2006 and 2008 Racing Acts and <u>thereby directly resulted and were the proximate cause</u> of the Plaintiff Casinos being compelled to deposit approximately $89.2 million into the 2006 and 2008 Act Funds for redistribution to horse racing tracks, including tens of millions of dollars to Balmoral Park and Maywood Park, for the benefit of the owners and operators of those tracks[.]

(Compl. ¶ 64) (emphasis added).

The essential causal link alleged by Plaintiffs – that legislation was "enacted," "signed," or "secured" in exchange for campaign contributions – is a link that is irreparably broken by virtue of legislative immunity. This is because the legislative immunity also functions as an evidentiary and testimonial privilege. *See Schlitz v. Virginia*, 854 F.2d 43, 46 (4th Cir. 1988), *overruled on other grounds by Berkley v. Common Council of City of Charleston*, 63 F.3d 295 (4th Cir. 1995) ("[T]he purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves"). Plaintiffs' theory against Friends of Blagojevich is dependent on a finding that the legislation was enacted *because* of improper motives. But <u>no</u> inquiry into motives surrounding legislation is permissible. A legislator's reasons or motives for any legislation is forever and permanently shielded from any inquiry or proof by a civil litigant alleging wrongdoing in the legislative process. As the Seventh Circuit stated in *Thillens*:

> Thillens will not be able to show that it is entitled to relief "without proof of a legislative act or the motives or purposes underlying such an act." As noted above, Thillens' causes of action are inextricably linked to allegations that the defendants misused their legislative authority and influence to enact legislation regulations detrimental to Thillens. Its conspiracy theories depend on proof of the defendants' motives and on a showing of actions taken after bribes were accepted. Thillens is challenging directly actions within the protected sphere of legislative activity. The defendants therefore are immune from liability for the allegedly wrongful acts stated in the complaint.

729 F.2d at 1131 (internal citations omitted); *see also Chappell*, 73 F.3d at 922; *U.S. v. Brewster*, 408 U.S. 501, 509-10, 527 (1972); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 n.5 (D.C. Cir. 1995) ("Even when properly subject to suit, members of Congress are privileged against the evidentiary use against them of any legislative act, even if the act is not claimed to be itself illegal, but is offered only to show motive . . . .") (citations omitted).

This evidentiary privilege includes a testimonial privilege whereby a legislator "may not be made to answer" questions – in a deposition, on the witness stand, and so forth – regarding legislative activities. *Gravel v. United States*, 408 U.S. 606, 616 (1972); *see also U.S. v.*

13

*Johnson*, 383 U.S. 169, 180 (1966) ("[A] charge . . . that the Congressman's conduct was improperly motivated . . . is precisely what the Speech or Debate Clause generally forecloses from executive and judicial inquiry."); *Helstoski*, 442 U.S. at 490. Thus, Plaintiffs cannot establish that any injury they suffered was proximately caused by racketeering activity, and their claim under § 1962(c) fails.

Plaintiffs also allege a violation of 18 U.S.C. § 1962(d), which makes it unlawful to conspire to violate § 1962(a), (b), or (c). However, where a plaintiff has failed to adequately allege a violation of § 1962(a), (b), or (c) due to the absence of proximate causation, he cannot maintain a claim for damages under § 1962(d). *See Xinos v. Kappos*, 270 F. Supp. 2d 1027, 1033-34 (N.D. Ill. 2003) (dismissing count under § 1962(d) because plaintiff was unable to satisfy causation element with respect to claims under other RICO subsections). Therefore, Plaintiffs' claim under § 1962(d) should be dismissed as well.

Not only do the allegations alleged by the Casino Plaintiffs fail as described above, there is no allegation that *could* be alleged by way of any amendment which might remedy the fatality which is inherently built into the claims against Blagojevich and Friends of Blagojevich. The RICO action against both Defendants must be dismissed with prejudice.

## II.   PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE OF *RES JUDICATA.*

In any case, Plaintiffs' claims are barred by *res judicata*. The doctrine of *res judicata* bars a party from bringing a claim that arises from the same "group of operative facts" as a claim in an earlier suit that resulted in a "final judgment on the merits." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302, 307, 703 N.E.2d 883, 889, 891 (Ill. 1998). A federal court must give "full faith and credit" to a state court judgment, *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985), and, in determining the preclusive effect of that judgment, the court must apply the *res judicata* principles of that state. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007). In this case, therefore, the Court must apply Illinois *res judicata*

14

principles to ensure that the Illinois proceedings have the same effect in this Court as they would have in an Illinois court. *Marrese*, 470 U.S. at 375 (citing 28 U.S.C. § 1738).

Three elements must be met for *res judicata* to apply to a claim: (1) the parties in the present suit were also parties, or were in privity with parties, in the previous suit; (2) there was a "final judgment on the merits" in the prior suit; and (3) plaintiff's claim in the present suit arises from the same "group of operative facts" as the previous claim. *River Park*, 184 Ill. 2d at 302, 307, 703 N.E.2d at 889, 891. *Res judicata* "extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit." *Id*. at 302, 703 N.E.2d at 889. In determining whether claims are barred by *res judicata*, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id*. at 311, 703 N.E.2d at 893.

All three elements are met here. First, the parties are the same. The Plaintiffs are identical. The defendants sued in the State Court Action were executives of the State of Illinois, and the real parties in interest in the State Court Action were the same horse racing track defendants named in the instant case. Privity exists "between parties who adequately represent the same legal interests." *Schnitzer v. O'Connor*, 274 Ill. App. 3d 314, 326, 653 N.E.2d 825, 833 (1st Dist. 1995). Because "[i]t is the identity of interest that controls in determining privity, not the nominal identity of the parties," *id*., and the defendants in the instant case all share an identity of interests in this litigation and in the State Court Action, they are in privity. Thus, the first requirement for *res judicata* is met.

Second, on June 5, 2008, the Supreme Court of Illinois issued a final judgment ruling in the State Court Action. *See* Exhibit B (*Empress Casino Joliet Corp. v. Giannoulias*, 231 Ill. 2d 62, 869 N.E.2d 277 (Ill. 2008), *cert. denied,* 129 S. Ct. 2764 (June 8, 2009)). Therefore, the judgment dismissing with prejudice Casino Plaintiffs' claims in this suit was final.

Finally, the Casino Plaintiffs' claims in the present action arise from the same "group of operative facts" as their claims that were dismissed with prejudice on June 5, 2008. In the prior State Court Action, Casino Plaintiffs claimed that the 2006 Racing Act was void and unenforceable, and that the funds assessed against the Casino Plaintiffs should be returned to them. The instant action is comprised of an attack upon the same statutory scheme, although Plaintiffs now cast their attack on modified and pretextual grounds of voidability and unenforceability. As *res judicata* "extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit," *River Park*, 184 Ill. 2d at 302, 703 N.E.2d at 889, Casino Plaintiffs' RICO claims are covered by the doctrine.

That Casino Plaintiffs have recast their allegations as RICO claims is irrelevant to the *res judicata* analysis; that the claims arise from the same group of operative facts is dispositive. *River Park*, 184 Ill. 2d at 311, 703 N.E.2d at 893. The decision in *Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863 (9th Cir. 1995), is instructive in this regard. In that case, a plaintiff health clinic brought a state court action seeking injunctive relief against defendants who had allegedly engaged in a pattern of harassing the clinic. *Id*. at 865-66. The state court ultimately issued a judgment in plaintiff's favor granting the injunction. Later, plaintiff brought a RICO action for treble damages in federal court, alleging a pattern of arson and extortion by defendants. *Id*. at 866. The Court of Appeals held that the RICO claim was barred by *res judicata* – even though plaintiff's legal theories, and the relief sought, were different in the two suits, and plaintiff did not present evidence of conspiracy or extortion in the original state court action. *Id*. at 867-69.

Also on point is *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1232-33, 1236-37 (7th Cir. 1986). In that case, the Seventh Circuit concluded that Illinois *res judicata* principles barred plaintiffs' federal RICO action against a bank that had previously foreclosed on their mortgage in an Illinois state court proceeding. *Id.* at 1232-33. The Seventh Circuit noted that plaintiffs had "failed to raise their fraud claims as a defense in the state court mortgage foreclosure

16

proceedings initiated by the Bank." *Id*. at 1232. The Court held that a party "may not relitigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original plaintiff which if successful would nullify the initial judgment." *Id*. at 1234.

Casino Plaintiffs cannot save their claims from dismissal on the grounds of *res judicata* by asserting that additional "predicate acts" occurred after their state court claims were resolved. "Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost." *Anderson v. Lincoln Ins. Agency Inc*., No. 02-C-8377, 2003 WL 291928, *2 (N.D. Ill. Feb. 10, 2003) (plaintiffs were precluded by *res judicata* from asserting RICO claims based on certain agreements where plaintiffs previously brought a claim challenging the agreements on different grounds); *see also Misischia v. St. John's Mercy Health Sys*., 457 F.3d 800, 804-05 (8th Cir. 2006) (affirming dismissal of RICO claim and stating that "'[t]he doctrine of *res judicata* would become meaningless if a party could relitigate the same issue . . . by merely positing a few additional facts that occurred after the initial suit.'" (ellipsis in original) (citation omitted)); *Fox v. Maulding*, 112 F.3d 453, 459 (10th Cir. 1997) (affirming dismissal of RICO claim as barred by *res judicata* over plaintiff's objection that "wrongdoing was still occurring" after prior action in which plaintiff could have asserted RICO); *Feminist Women's Health Ctr*., 63 F.3d at 868 n.4 (that certain alleged facts included in RICO claim occurred after entry of earlier state court judgment did not prevent dismissal of RICO claim on the grounds of *res judicata*). Accordingly, because the State Court Action was a lawsuit involving the same parties and sharing the same core of operative facts, and because that action resulted in a final judgment on the merits, Plaintiffs' Complaint is barred by *res judicata*.

## CONCLUSION

Under well-settled and long-standing principles of legislative immunity, the actions complained of *cannot* give rise to *any* civil litigation, let alone the actions and remedies sought by the Casino Plaintiffs. The action against Blagojevich must be dismissed, and the same

principles of legislative immunity render any RICO action against Friends of Blagojevich legally unsupportable and completely incapable of proof. Neither of these claims are remediable by any conceivable amendment Plaintiffs might proffer.

Further, these same parties have fully litigated their rights in the state courts of Illinois, and *res judicata* is appropriately invoked to prevent Plaintiffs' attempt to take a second bite of the apple.

The Casino Plaintiffs have brought this action in an attempt to have a U.S. District Court nullify legislation lawfully enacted by the Illinois legislature, signed by the lawfully elected Illinois Governor, and upheld against a full and rigorous analysis by the Illinois Supreme Court. It is difficult to imagine a remedy that would more directly infringe upon the roles assigned exclusively to legislative, executive and judicial branches of a sovereign state. This Court is, in essence, being requested to order the Illinois State Legislature to rescind their votes, order the Illinois Governor to veto previously approved legislation, and order the Illinois Supreme Court to reverse its findings. This is not the province of a U.S. District Court.

For the reasons stated above, the Complaint should be dismissed with prejudice.

Dated: July 31, 2009

<div style="margin-left:40%">

Respectfully submitted,

ROD BLAGOJEVICH and FRIENDS OF BLAGOJEVICH

By:____/s/ Jay Edelson_____
        One of Their Attorneys

</div>

Jay Edelson
Steven Lezell
KAMBEREDELSON, LLC
350 N. LaSalle, Suite 1300
Chicago, IL 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
jedelson@kamberedelson.com
slezell@kamberedelson.com