IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMPRESS CASINO JOLIET CORP., DES PLAINES DEVELOPMENT LTD. P'SHIP, HOLLYWOOD CASINO-AURORA, INC., and ELGIN RIVERBOAT RESORT-RIVERBOAT CASINO,<br><br>    Plaintiffs,<br><br>vs.<br><br>ROD BLAGOJEVICH, FRIENDS OF BLAGOJEVICH, JOHN JOHNSTON, BALMORAL RACING CLUB, INC., MAYWOOD PARK TROTTING ASS'N, INC., ARLINGTON PARK RACECOURSE, LLC, FAIRMOUNT PARK, INC., and HAWTHORNE RACE COURSE, INC.,<br><br>    Defendants. | Case No. 09 C 3585 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Court granted summary judgment in favor of defendants, concluding that plaintiffs had failed to offer admissible evidence from which a reasonable jury could conclude that defendants' alleged conspiracy to violate the RICO statute proximately caused their injury, a requirement for liability. See Aug. 7, 2013 Mem. Op. at 13-16. Plaintiffs have moved for reconsideration. The Court assumes familiarity with its August 7 decision.

Plaintiffs contend that defendants bribed former Governor Rod Blagojevich, making large contributions to his political campaign in exchange for ensuring adoption

of the 2006 and 2008 Racing Acts, which benefitted defendants. The Court concluded that plaintiffs had offered evidence from which a jury reasonably could find there was in fact a *quid pro quo* agreement but that they had not offered evidence from which a jury reasonably could find that this proximately caused the adoption of the two Racing Acts. In their motion for reconsideration, plaintiffs challenge the proximate cause ruling.

**1.     The 2008 Racing Act**

The Court begins with the 2008 Racing Act. The Court summarizes its proximate cause determination as follows:

- Plaintiffs offered no evidence that Blagojevich or others acting on his behalf actually influenced or attempted to influence legislators to vote for the Act.

- Plaintiffs offered evidence that Blagojevich traded his signature for a $100,000 contribution but offered no evidence from which a reasonable jury could find that this was a proximate cause of the Act's adoption. The legislation passed the House by an 83-28 vote and the Senate by a 37-13 vote, significantly more than would have been needed to override a veto by the Governor. The Court stated that it was entirely speculative that Blagojevich's signature was necessary for adoption of the Act and that "plaintiffs have done nothing to remove this from the realm of speculation."

*See* Mem. Op. at 16.

In their motion for reconsideration, plaintiffs claim that the Court "overlooked" evidence that they characterize as follows:

- In April 2008, defendant Johnston met with Blagojevich to press for passage of the Act, and Blagojevich asked for a campaign contribution.

2

Johnston did not make or promise one at the time.

- Between June and August 2008, several attempts to pass the Act failed.

- In September 2008, Blagojevich obtained a promise from Johnston for a $100,000 contribution. He then repeatedly contacted Johnston to obtain assurances that Johnston would follow through.

- The Act passed the General Assembly in November 2008, immediately after a contact between Johnston and Blagojevich in which Johnston again assured Blagojevich that he would come through on the contribution.

The Court notes initially that for this "overlooked" evidence, which they characterize as significant, plaintiffs cite paragraphs 24 through 31 of their statement of undisputed facts submitted pursuant to N.D. Ill. LR 56.1. *See* Mot. to Alter Judg. at 6-7. The Court notes, however, that although these references were contained within the more than 2,000 pages of materials submitted in connection with the summary judgment motions, plaintiffs did not cite them in their briefs or otherwise focus the Court on these particular contentions – which suggests that this evidence is not as compelling as plaintiffs now contend. *See* Pls.' Resp. in Opp. to Summ. Judg. at 11-13 (discussion of 2006 Racing Act events); *id.* at 19-21 (discussion of proximate cause issue). In fact, this evidence in no way undermines or affects the Court's conclusion that the claim of proximate cause is speculative. The Court repeats what it said before: "Plaintiffs have offered no evidence that Blagojevich or others acting on his behalf influenced legislators to vote for this legislation." Mem. Op. at 16. All plaintiffs offer is temporal proximity between Johnston's promise of a bribe to Blagojevich and the legislature's passage of the 2008 Act. Any causal connection is speculative. The evidence plaintiffs cited

3

before and now would not permit a reasonable jury to find the requisite proximate cause.

**2.     The 2006 Racing Act**

Plaintiffs' causation evidence regarding the 2006 Racing Act consists primarily of statements and testimony by two legislators, State Representative William Black and State Representative Brent Hassert. Both of these legislators made statements on the floor of the General Assembly to the effect that they understood that the governor's office was putting pressure on legislators to vote for passage of the Act and that some legislators were changing their votes as a result. See Mem. Op. at 3. Specifically, Black stated that legislators were being called to the governor's office and also said that a number of legislators had changed their votes. Hassert said that the governor had been calling legislators to ask them to vote for the legislation and that some votes had changed.

The Court concluded that Black's and Hassert's statements on the floor of the legislature were inadmissible hearsay. In this regard, the Court assumed that the record of the legislative proceedings was subject to a hearsay exception, specifically Federal Rule of Evidence 803(8), but stated that this "does not eliminate the need to show an exception for hearsay statements contained within that record. See Fed. R. Evid. 805 (hearsay within hearsay)." Mem. Op. at 14 n.1. The Court concluded that no hearsay exception applied that would permit Black or Hassert's statements to be admitted.

In their motion for reconsideration, plaintiffs note that both Black and Hassert are available "to testify live about their observations" and contend that "this answers the

4

Opinion's expressed concern about hearsay-within-hearsay." Mot. to Alter Judg. at 4. Plaintiffs do not, however, address the *internal* hearsay issue, other than to attempt to dismiss it with the back of their hand by saying that live testimony will cure any problems. *See id.* at 4-5. That is not the case. Black's deposition testimony, which the Court reviewed before and has reviewed again, reflects that all he observed was that he saw and heard a legislative staffer approach a representative to say that "the Governor and Speaker want you to come down to the Governor's Office right now," and heard a staffer (possibly the same one) tell a particular legislator (again, possibly the same one) that "[y]ou're wanted on the second floor," which is where the governor's office is located. Pls.' Ex. 52, Black Dep. at 82-83. Black also characterized it as "unusual for somebody to say verbally you're wanted on the second floor." *Id.* at 83. The Court assumes that this testimony might be admissible. Black observed the event(s) about which he testified, and the staffers' statement(s) are not hearsay because they were simply requests to do something and are not offered to show their truth. And Black's characterization of what he observed as unusual may well be an admissible lay opinion.

The Court also assumes that Hassert would testify at a deposition or at trial consistently with his statements on the General Assembly floor. But it is clear from the face of Hassert's statements that they are rank hearsay, not subject to any exception that would permit their admissibility: he stated that he had "hear[d] from somebody . . . that there's promises that have been made to support this Bill." Pls.' Statement of Undisputed Facts ¶ 54. Plaintiffs offer no argument, nor could they, that testimony by Hassert along these lines would be admissible in evidence.

Thus the only legislator testimony plaintiffs offer that might be admissible is that

of former Representative Black. Black's testimony, even taken together with the other evidence plaintiffs offer, would not permit a reasonable jury to find proximate cause with respect to the 2006 Racing Act. Plaintiffs offer no evidence connecting any pressure by the governor to particular legislators, with the single possible exception identified in Black's deposition testimony. And the rest of what Black opined on the General Assembly floor, regarding why other legislators changed votes, whether there was a *quid pro quo* offered to legislators, or whether improprieties had occurred, is unquestionably inadmissible speculation.[1] In short, as the Court indicated in its ruling on summary judgment, there is no evidence directly connecting these events; rather the connection is speculative. *See* Mem. Op. at 16. In this regard, the Court has considered all of the evidence, including not just what it has just discussed, but also the points cited by plaintiffs at page five of their motion for reconsideration. The Court sees nothing that should lead to a conclusion different from the one that it reached at page fifteen of its summary judgment ruling. Plaintiffs have not offered evidence from which a reasonable jury could find that the alleged RICO conspiracy was a proximate cause of the passage of the 2006 Racing Act.

      Plaintiffs also say in their motion, albeit only in a footnote, that the Court limited the number of depositions of legislators – an apparent attempt to suggest that this might be why they do not have more evidence regarding proximate causation. *See* Mot. to Alter Judg. at 5 n.3. If that is what plaintiffs are suggesting, it is a bit of revisionist history. The issue of depositions of legislators arose when defendants – not plaintiffs –

---

[1] Even now, in their motion for reconsideration, plaintiffs make no attempt to offer a basis for admission of Black's speculative statements. Their commentary to the effect that Black is now beholden to the horse racing industry and thus might be tempted to shade his testimony in defendants' favor is no substitute for evidence supporting a reasonable inference of causation.

6

sent deposition subpoenas to some 140 persons who had been legislators at the relevant times. The Illinois Attorney General appeared on a motion to quash the depositions, arguing that the legislators were protected by immunity. Plaintiffs were given a chance to respond to that motion, but even though their counsel said they might respond, *see* Sept. 13, 2012 Tr. at 6, they did not do so. Defendants, for their part, filed a written objection to the motion to quash. The Court ruled that no immunity or privilege protected the legislators from testifying about communications with or from the governor or governor's office, which was the primary relevant topic that defendants wished to explore. *See* Oct. 15, 2012 Tr. at 2-5. After the Court made this ruling, it advised defense counsel – who, again, was the only attorney who had requested any legislator depositions – that "we're not going to have a hundred depositions or ninety or eighty or seventy or sixty or fifty or forty, and maybe even some significant numbers below that." *Id.* at 6. The Court did not, however, impose a specific limit on the number of depositions but rather encouraged counsel to reach an agreement, *id.*, and set the matter over to a later date. At the next hearing, defense counsel reported that he had proposed to take the depositions of nineteen legislators, had "negotiated that down" to eight, and was still talking to the Attorney General. *See* Nov. 1, 2012 Tr. at 2-3. The Court encouraged defense counsel and the Attorney General to include plaintiffs' counsel in their discussions, and set the matter over to another date.

On the next court date, November 14, 2012, defense counsel and the Attorney General advised that they had agreed to take just two legislator depositions. Plaintiffs' counsel advised that he had not been consulted. He stated that he wanted to take the

7


depositions of *another four legislators*, naming them for the record.[2] Defendants objected, saying that these were defendants' depositions. The Court rejected this argument, stating that plaintiffs had previously indicated that they would want to ask questions at any legislator depositions, and encouraged the parties to continue to talk. That was the last the Court heard on the topic.

To make the point crystal clear, the Court never prevented plaintiffs from deposing any particular legislators and never imposed a specific limitation other than its suggestion that forty depositions would be too many. Perhaps more importantly, plaintiffs' counsel *never* told the Court that they needed to take the depositions of any particular legislators beyond the four they identified, or of legislators generally, in order to meet their burden of proof. Thus any suggestion by plaintiffs that they were hampered by some limitation imposed by the Court is not only incorrect; it comes too late in the day.

### Conclusion

For the reasons stated above, the Court denies plaintiffs' motion to alter the judgment (dkt. no. 253).

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 19, 2013

---

[2] It does not appear that a transcript of the November 14, 2012 hearing has yet been prepared. The Court has consulted its own notes of the hearing.